**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In Re Subpoena Issued to Justin M. Miller** | **Case No.** |
| *UNDERLYING ACTION:*<br><br>SUSSMAN SALES COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>VWR INTERNATIONAL, LLC,<br><br>Defendant. | Case No. 20-CV-2869 (LTS) (BCM) |

**DEFENDANT VWR INTERNATIONAL, LLC AND NONPARTY JUSTIN M. MILLER'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO TRANSFER, QUASH, OR FOR A PROTECTIVE ORDER**

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1
II. FACTUAL BACKGROUND .......... 3
III. APPLICABLE LAW .......... 6
A. Jurisdiction and Venue .......... 6
B. Quash and Protective Orders .......... 8
IV. ARGUMENT .......... 11
A. The Motion Is Properly Before the Court .......... 11
B. The Court Should Transfer the Dispute .......... 12
C. Alternatively, the Court Should Issue a Protective Order or Quash the Subpoena .......... 14
i. The Subpoena Should be Quashed Because it Seeks Privileged Information .......... 14
ii. The Court Should Quash the Subpoena Because It Imposes an Undue Burden .......... 14
a. The Court Should Apply *Shelton* .......... 15
b. The Subpoena Should be Quashed Under *Shelton* .......... 15
c. The Subpoena Should be Quashed Under *Frazier* .......... 18
d. The Court Should Enter a Protective Order Precluding Mr. Miller’s Deposition 20
e. The Subpoena’s Document Requests are Improper .......... 20
V. CONCLUSION .......... 21

## TABLE OF AUTHORITIES

### Rules and Statutes

28 U.S.C. § 1332 ........ 11

Fed. R. Civ. P. 26 ........ *passim*

Fed. R. Civ. P. 45 ........ *passim*

### Cases

*Aamco Transmissions, Inc. v. Baker*, No. CIV.A. 06-5252, 2008 WL 509220 (E.D. Pa. Feb. 25, 2008) ........ 10, 17

*Adeniyi-Jones v. State Farm Mut. Auto. Co.*, No. CV 14-7101, 2015 WL 6180965 (E.D. Pa. Oct. 21, 2015) ........ 10, 18

*Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55 (1st Cir. 2003) ........ 15

*Boughton v. Cotter Corp.*, 65 F.3d 823 (10th Cir. 1995) ........ 15

*Cambs v. Am. Express Co., Inc.*, No. CV 15-428, 2016 WL 4735022 (E.D. Pa. Sept. 12, 2016) ........ *passim*

*Cruz v. Progenesis, Inc.*, No. 26-MC-00022, 2026 WL 1022414 (E.D. Pa. Apr. 15, 2026) ........ 8, 9

*Drummond Co. v. Collingsworth*, No. 2:13-mc-00365, 2014 BL 103505 (W.D. Pa. Apr. 14, 2014) ........ 7

*Frank Brunckhorst Co. v. Ihm*, No. MISC. 12-0217, 2012 WL 5250399 (E.D. Pa. Oct. 23, 2012) ........ 9, 20

*Frank v. Honeywell Int'l Inc.*, No. 15-MC-00172, 2015 WL 4770965 (E.D. Pa. Aug. 13, 2015) ........ 9, 14

*Frazier v. Se. Pennsylvania Transp. Auth.*, 161 F.R.D. 309 (E.D. Pa. 1995) ........ *passim*

*Gardner v. Boone*, No. 19-CV-5572, 2023 WL 1927992 (E.D. Pa. Feb. 9, 2023) ........ 9

*Green v. Cosby*, 216 F. Supp. 3d 560 (E.D. Pa. 2016) ........ 8, 13

*In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234 (E.D. Pa. 2014) ........ 9, 20

*In re Keebaugh*, No. MC 19-163, 2019 WL 5802703 (E.D. Pa. Nov. 6, 2019) ........ 7, 9, 14

*In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2012 WL 298480 (E.D. Pa. Jan. 31, 2012) ........ 9, 20

*In re Plastics Additives Antitrust Litig.*, No. CV 03-2038, 2005 WL 8149514 (E.D. Pa. Aug. 9, 2005) ........ 10

*In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65 (2d Cir. 2003) ........ 15

*Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348 (D.N.J. 1990) ........ 15

*Kompan A/S v. MRC Recreation, Inc.*, No. 24-6158, 2024 WL 4278988 (D.N.J. Sept. 24, 2024) ........ 8

*Marshack v. Dembitzer*, No. 26-MC-56, 2026 WL 2199125 (E.D. Pa. July 29, 2026) ..................8

*McCook Metals LLC v. Alcoa, Inc.*, 249 F.3d 330 (4th Cir. 2001)...........................................6, 11

*Meyer v. Delaware Valley Lift Truck, Inc.*, No. CV 18-1118, 2019 WL 2903666 (E.D. Pa. July 5, 2019) ..........................................................................................................................6, 12

*Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621 (6th Cir. 2002) ..................................15

*Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999) .................................................................15

*Patrick v. Equifax Info. Servs., LLC*, No. 23-4092, 2024 WL 4404187 (D.N.J. Oct. 3, 2024).....15

*PharmaCare U.S., Inc. v. Season 4, LLC*, No. 3:23-CV-01318-JES-AHG, 2024 WL 2301407 (D.N.J. May 21, 2024) .........................................................................................................8, 13

*Premium Payment Plan v. Shannon Cab Co.*, 268 F.R.D. 203 (E.D. Pa. 2010) ...............10, 18, 19

*Rardon v. Falcon Safety Prods., Inc.*, No. 23-1594, 2023 WL 5347298 (3d Cir. Aug. 21, 2023)..9

*Savant Sys., LLC v. Crestron Elecs., Inc.*, No. CIV.A. 12-MC-51, 2012 WL 987404 (E.D. Pa. Mar. 22, 2012).........................................................................................................8, 9, 14

*Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)............................................. *passim*

*State Farm Mut. Auto. Ins. Co. v. Stavropolskiy*, No. 15-CV-5929, 2017 WL 3116284 (E.D. Pa. July 21, 2017)........................................................................................................ *passim*

*Takeda Pharm. Co. Ltd. v. Caremark RX, LLC*, No. CV 23-MC-111, 2023 WL 6201363 (E.D. Pa. Sept. 22, 2023) ..........................................................................................................7, 12

*Thomas v. Marina Assocs.*, 202 F.R.D. 433 (E.D. Pa. 2001) ..................................................6, 12

*U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72 (1988)................................6, 11

*United States v. Kindred Healthcare, Inc.*, No. CV 16-00683-KSM, 2024 WL 5410444 (E.D. Pa. Nov. 13, 2024) .......................................................................................................10, 15

*White v. Devereux Found.*, No. CV 23-2060, 2024 WL 5668920 (E.D. Pa. Jan. 12, 2024) .....7, 12

**Exhibits**

Exhibit A – Declaration of Justin M. Miller, September 9, 2026

Exhibit B – Second Amended Complaint, Sussman Sales Company, Inc. v. VWR International, LLC, No. 20-cv-2869 (LTS) (BCM) (S.D.N.Y. Apr. 7, 2020)

Exhibit C – Sales Representative Agreement, October 4, 2018

Exhibit D – Termination Letter, April 3, 2019

Exhibit E – VWR's RFP Responses

Exhibit F – Feb. 25, 2026 Hr'g Tr., Sussman Sales Company, Inc. v. VWR International, LLC, No. 20-cv-2869 (LTS) (BCM) (S.D.N.Y. Apr. 7, 2020)

Exhibit G – Email Serving the Subpoena, August 28, 2026

Defendant VWR International, LLC ("VWR") and non-party Justin M. Miller ("Mr. Miller") (the "Movants") respectfully submit this memorandum in support of their Motion to Transfer, Quash, or for a Protective Order (the "Motion") in connection with the August 28, 2026 *subpoena duces tecum* commanding Mr. Miller to appear and testify and produce documents (Ex. A at Ex. 2, the "Subpoena"), served by Plaintiff Sussman Sales Company, Inc. ("Sussman") in *Sussman Sales Company, Inc. v. VWR International, LLC*, No. 20-cv-2869 (LTS) (BCM) (S.D.N.Y. Apr. 7, 2020) (the "Underlying Action"). Movants respectfully request that the Court transfer this dispute to the Southern District of New York. If this Court decides against transfer, Movants alternatively request that the Court quash the Subpoena or issue a protective order eliminating any requirement that Mr. Miller produce documents or appear for deposition. At minimum, the Court should preclude inquiry into subjects that implicate the attorney-client privilege and work product doctrine.

## I. INTRODUCTION

Sussman sued VWR in April 2020 in the Southern District of New York, asserting multiple claims arising from a 2018 Sales Representative Agreement between the parties. *See* Ex. B. Sussman's principal contention is that because Dwayne Johnson, one of VWR's former sales employees, engaged in bid rigging, VWR breached its contractual warranty to perform in compliance with the law, resulting in millions of dollars in lost profits damages for Sussman. This Motion concerns the Subpoena, which commands testimony and documents from Mr. Miller, the former General Counsel of VWR and its parent company, Avantor, Inc.

Movants object to the Subpoena in its entirety on privilege and burden grounds. As VWR's chief legal officer, Mr. Miller did not work in sales or any other aspect of the contract that bound the parties. He has no personal or direct knowledge of the allegations in the Underlying Action. Not

surprisingly, his only role with respect to the Agreement was to obtain and provide legal advice *after* Plaintiff notified him and VWR's former CEO of Mr. Johnson's conduct in February 2019. To the extent he possesses any relevant information concerning the allegations in the Underlying Action, Mr. Miller gained that information in his capacity as General Counsel and any such information is therefore protected by the attorney-client privilege or work product doctrine.

Movants' principal request is that this Court transfer this dispute to the Southern District of New York, where the Underlying Action is pending. *See* Fed. R. Civ. P. 45(f). Transfer to the Southern District of New York is appropriate because Mr. Miller consents to a transfer and exceptional circumstances warrant a transfer. The Honorable Magistrate Judge Barbara Moses of the Southern District of New York has already adjudicated numerous discovery disputes between the parties, including a prior request made by Sussman to depose another VWR in-house counsel, which was denied.

If this Court decides it should resolve the Motion, Movants request that the Court quash the Subpoena in its entirety or, also in the alternative, issue a protective order. As noted above, Mr. Miller has no personal knowledge of the facts underlying the New York litigation apart from information gained in his role as General Counsel. Any attempt to extract what narrow, cumulative information Mr. Miller might have would be extremely burdensome for Movants, benefiting Sussman only by imposing unwarranted costs on VWR. Similarly, Plaintiff's request that Mr. Miller produce "all documents that refer to *any bidding*" by VWR on contracts with the NYC DOE is excessively overbroad, duplicative of discovery already collected from VWR, and seeks privileged information. In any event, Mr. Miller does not have such documents in his possession, custody or control.

For these reasons, Movants respectfully request that the Court transfer the dispute to the Southern District of New York or, alternatively, quash the subpoena or enter a protective order eliminating the deposition requirement. Should the Court determine that Miller's testimony is warranted (it should not), VWR requests that the Court, at minimum, enter a protective order precluding inquiry into subjects that implicate the attorney-client privilege and work product doctrine.

## II. FACTUAL BACKGROUND

Sussman is a New York corporation that sells educational products to schools around the country. Ex. B ¶ 19. VWR is a limited liability company; its sole member is a Delaware corporation having its principal place of business in Pennsylvania. *Id.* VWR distributes educational products. *Id.* ¶ 23. On October 4, 2018, Sussman and VWR entered into a Sales Representative Agreement ("Agreement") in which Sussman agreed to serve as VWR's non-exclusive sales representative in the five boroughs of New York City (the "Territory"). Ex. C. Pursuant to the Agreement, Sussman was required to market and sell Triumph Boards (a brand of interactive flat panel displays used in classrooms) to schools in the Territory. *Id.* §§ 2-3. In exchange, VWR agreed to pay a 10% commission on Triumph Board sales in the Territory. *Id.* § 2.

In early February 2019, Sussman emailed VWR's CEO, Michael Stubblefield, and General Counsel, Mr. Miller, a letter accusing VWR of coordinating bids for the sale of Triumph Boards to New York City public schools. Ex. A at Ex. 1. After receiving this letter, VWR began an internal investigation into the bid-rigging allegations, conducted by outside counsel and overseen by in-house counsel at VWR. *See* Ex. A ¶ 9; Underlying Action, Dkt 141 ¶ 2.a. In May 2019, VWR voluntarily self-disclosed to the Department of Justice, Antitrust Division that a rogue employee engaged with

vendors outside of VWR to rig bids for VWR's products. Underlying Action, Dkt. 95 ¶ 4. VWR received leniency following its voluntary self-disclosure. *Id*.

On April 3, 2019, Sussman's attorney sent a letter to a VWR Executive Vice President and Mr. Miller stating that Sussman was terminating its contract with VWR, citing, *inter alia*, an alleged breach of VWR's warranty to comply with all codes, regulations and laws applicable to its performance pursuant to the Agreement. Ex. D, *see also* Ex. C §5.2(b). The parties were unable to resolve their differences, and the Underlying Action followed in April 2020.

The Underlying Action was stayed three times: first for the briefing of motions to dismiss (Underlying Action, Dkt. 17), second upon the parties' agreement (*id*. Dkt. 50), and finally to allow the court to determine whether it had subject matter jurisdiction (*id*. Dkt. 66). Discovery resumed in April 2025. *Id*. Dkt. 92. Under the current scheduling order, fact discovery closes on October 9, 2026. *Id*. Dkt. 198. The parties have exchanged voluminous discovery, spanning tens of thousands of documents bearing on, *e.g.*, VWR's Triumph Board business, Mr. Johnson's conduct, VWR's disclosures to law enforcement, and communications from percipient witnesses. *See* Ex. E.

The Underlying Action has been fraught with numerous discovery disputes. One such dispute concerned Sussman's demand to depose another former in-house attorney for VWR, Stacy Broad. Judge Moses denied Sussman's request to compel Ms. Broad's deposition, rejecting Sussman's theory that VWR's disclosure to law enforcement resulted in a sweeping waiver of the attorney client privilege. *Id*. Dkt. 141 ¶ 2.e; Ex. F 175:21-176:7 (rejecting deposition of former CEO Michael Stubblefield as "premature"; finding further that "[u]nless I change my mind dramatically on privilege, you're not getting Ms. [Stacy] Broad [former Deputy General Counsel]").

Undeterred, Sussman now seeks testimony (in the Eastern District of Pennsylvania) and documents from Mr. Miller, another former in-house attorney. Mr. Miller was an Avantor (parent

company to VWR) Executive Vice President who served as Corporate Secretary and General Counsel from 2017 to 2023. Ex. A ¶¶ 1-2. Mr. Miller has no personal knowledge of the events underlying the allegations in Sussman's complaint. *Id.* ¶¶ 8, 12-14. He learned of any relevant facts in his capacity as General Counsel after Sussman emailed a letter to VWR executives in February 2019. *Id.* ¶ 8. From that point forward, Mr. Miller was involved only as General Counsel, and as a result, any information he has about the facts underlying the Underlying Action would be protected by the attorney-client privilege or work product doctrine. *Id.* ¶ 9, 14. He never reported to the VWR or Avantor board about Sussman's allegations in his capacity as Secretary and never discussed the allegations with law enforcement, including the Department of Justice. *Id.* ¶¶ 10-11.

Sussman informed VWR's counsel that it would be seeking Mr. Miller's deposition in or around October, 2025. To date, Sussman has deposed Ahmed Mustafa, a former VWR employee who supervised Mr. Johnson. Sussman also served a subpoena targeting Steve Goodman, Mr. Mustafa's former supervisor. In addition, Sussman told VWR that it intends to seek the deposition of Tricia Sheen, a former colleague of Ahmed Mustafa who worked in sales, and Corey Walker, the former Executive Vice President.

During meet and confer discussions, VWR relayed that Mr. Miller was no longer employed by VWR, but that VWR's counsel would be representing Mr. Miller and would accept service of a subpoena on his behalf. Counsel for VWR also relayed that it would be seeking to quash the subpoena. Sussman argued that a deposition of Mr. Miller was appropriate because Mr. Miller also served as Corporate Secretary and Sussman should be permitted to depose Mr. Miller about his discussions with the VWR or Avantor board of directors concerning Mr. Johnson's conduct. Sussman also claimed it should be entitled to ask Mr. Miller about what he observed. VWR relayed the facts set forth above—*e.g.*, that Mr. Miller was not involved in the facts underlying this dispute

other than in his role as General Counsel and never reported the allegations to the VWR or Avantor boards—and offered to provide a declaration from Mr. Miller to that effect in lieu of deposition. Sussman refused, and served the Subpoena on August 28, 2026, demanding Mr. Miller's deposition on September 11, 2026. Ex. A at Ex. 2; Ex. G.

After serving the subpoena, and while the parties were preparing to take and defend several depositions (including of Sussman's key principals, Ron and Steve Sussman), Sussman's counsel abruptly informed Movants over the Labor Day weekend that they intended to withdraw "because of a conflict that makes it ethically impermissible for" him to continue. Sussman's counsel later informed the Court in the Underlying Action that the "conflict" is a dispute concerning whether Sussman or its counsel is required to pay attorney's fees awarded as a sanction against Sussman for discovery abuses. *See* Underlying Action, Dkts. 209, 214. Counsel for Sussman demanded that all depositions be "adjourned" or "rescheduled" but refused to withdraw the Subpoena, even though Mr. Miller agreed to accept service of a new subpoena with a new compliance date. Therefore, Movants were forced to file this Motion.

## III. APPLICABLE LAW

### A. Jurisdiction and Venue

This Court has subject matter jurisdiction over an ancillary proceeding to quash a subpoena if the court in the underlying action has subject matter jurisdiction. *See U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 76 (1988); *McCook Metals LLC v. Alcoa, Inc.*, 249 F.3d 330, 333-34 (4th Cir. 2001). Although a party generally "does not have standing to quash a subpoena served on a third party," *Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434 (E.D. Pa. 2001), there is an exception for parties seeking "to quash based on claims of privilege relating to the documents being sought" or who have an "interest" in the information sought. *Id.*; *see also Meyer v. Delaware*

*Valley Lift Truck, Inc.*, No. CV 18-1118, 2019 WL 2903666, at *1, n.1 (E.D. Pa. July 5, 2019) (holding defendant corporation had standing where it had an "interest" in records plaintiff sought from defendant's accountant); *White v. Devereux Found.*, No. CV 23-2060, 2024 WL 5668920, at *2, n. 1 (E.D. Pa. Jan. 12, 2024) (plaintiff had "a personal right with respect to the information contained in his employment records" and therefore, standing to contest subpoenas issued to his former employers).

Under Federal Rule of Civil Procedure 45(d)(3)(A), motions to quash must be filed in "the court for the district where compliance is required" meaning the place identified in the subpoena. *See Takeda Pharm. Co. Ltd. v. Caremark RX, LLC*, No. CV 23-MC-111, 2023 WL 6201363, at *1–2 (E.D. Pa. Sept. 22, 2023) (explaining that motions challenging subpoenas "must" be filed where compliance is required and "the place named in the subpoena . . . is the place where compliance is required"). Such motions are timely if "made before the date for compliance[.]" *In re Keebaugh*, No. MC 19-163, 2019 WL 5802703, at *2 (E.D. Pa. Nov. 6, 2019).

Rule 45 also allows a court to transfer a motion to quash to the court of the underlying action if "the person subject to the subpoena consents or if the court finds exceptional circumstances." *Id*. R. 45(f). In this way, Rule 45 is in harmony with Rule 26's grant of protective order authority to both "the court where the action is pending" and "the court for the district the deposition will be taken[.]" *Id*. R. 26(c)(1). This District has not addressed the issue directly, but persuasive authority suggests that it is procedurally proper for a court to transfer a combined motion to quash or for a protective order. *See Drummond Co. v. Collingsworth*, No. 2:13-mc-00365, 2014 BL 103505 (W.D. Pa. Apr. 14, 2014) (granting motion to transfer combined motion to quash and for protective order to the Northern District of Alabama).

"Whether to transfer a motion under Rule 45(f) 'is committed to the discretion of the court where compliance is required.'" *Marshack v. Dembitzer*, No. 26-MC-56, 2026 WL 2199125, at *2 (E.D. Pa. July 29, 2026) (quoting *Kompan A/S v. MRC Recreation, Inc.*, No. 24-6158, 2024 WL 4278988, at *2 (D.N.J. Sept. 24, 2024)). While this District has not addressed the issue directly, other Districts have held that because Rule 45 is calculated to protect non-parties, a non-party's consent "alone provides sufficient grounds to transfer the motion under Rule 45(f)[.]" *PharmaCare U.S., Inc. v. Season 4, LLC*, No. 3:23-CV-01318-JES-AHG, 2024 WL 2301407, at *2 (D.N.J. May 21, 2024). Moreover, "exceptional circumstances" warranting transfer exist under Rule 45 when the Court of the underlying action has already ruled on issues affecting the motion to quash. *See Green v. Cosby*, 216 F. Supp. 3d 560, 565 (E.D. Pa. 2016) (granting Rule 45(f) transfer motion for exceptional circumstances where subpoena sought to uncover misconduct that magistrate in the underlying action already determined did not exist).

**B. Quash and Protective Orders**

Fed. R. Civ. P. 26 and 45 govern federal civil subpoenas. Rule 26 limits the scope of discovery and provides for protective orders. Fed. R. Civ. P. 26(b)(2)(C) (courts may "limit the frequency or extent" of discovery); *id*. R. 26(c)(1) (the court may protect "from annoyance, embarrassment, oppression, or undue burden or expense"). Rule 45 provides that a court "must quash" a subpoena that "requires disclosure of privileged" materials or imposes an "undue burden." *Id*. R. 45(d)(3). District courts enjoy broad discretion on motions for protective order and to quash. *Cruz v. Progenesis, Inc.*, No. 26-MC-00022, 2026 WL 1022414, at *2 (E.D. Pa. Apr. 15, 2026). However, once a party demonstrates that the subpoena seeks protected information or that it imposes an undue burden, the court "must" quash. Fed. R. Civ. P. 45 (d)(3)(A); *see also Savant Sys., LLC v. Crestron Elecs., Inc.*, No. CIV.A. 12-MC-51, 2012 WL 987404, at *4 (quashing subpoena seeking

documents subject to a protective order); *Keebaugh*, 2019 WL 5802703, at *4 (similar); *Frank v. Honeywell Int'l Inc.*, No. 15-MC-00172, 2015 WL 4770965, at *5 (E.D. Pa. Aug. 13, 2015) (granting motion to quash and/or protective order as to burdensome subpoena).

Courts in this District apply the same burden-shifting framework to motions to quash and for a protective order. First, the subpoenaing party must demonstrate that the information sought is relevant; then, the moving party must show that it is entitled to protection. *See In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014) (discussing burden shifting on motion to quash). The same framework applies on motions to quash and for a protective order. *Cruz*, 2026 WL 1022414, at *3 (applying same framework, motion to quash or for protective order); *Gardner v. Boone*, No. 19-CV-5572, 2023 WL 1927992, at *2 (E.D. Pa. Feb. 9, 2023) (applying the same framework, motion for protective order). In the context of subpoenas seeking privileged information, "[t]he party moving to quash bears the burden of establishing that a privilege attaches[.]" *Savant Sys., LLC v. Crestron Elecs., Inc.*, No. CIV.A. 12-MC-51, 2012 WL 987404, at *4 (E.D. Pa. Mar. 22, 2012).

In deciding whether a subpoena seeking documents or testimony imposes an undue burden, courts in this District consider several general factors on motions for a protective order and to quash, including relevance, need, confidentiality, and harm.[1] However, the calculus changes when the subpoena commands a party's lawyer to appear for a deposition. The Third Circuit has not squarely addressed what factors apply in such a situation and the authority in this District is split. One line of cases holds that the party opposing the deposition must "establish[] undue burden or oppression

---

[1] *See e.g. In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2012 WL 298480, at *3 (E.D. Pa. Jan. 31, 2012) (considering "(1) relevance, (2) need, (3) confidentiality, and (4) harm" on cross motions to compel and quash); *Frank Brunckhorst Co. v. Ihm*, No. MISC. 12-0217, 2012 WL 5250399, at *5 (E.D. Pa. Oct. 23, 2012) (considering the same factors on motion to quash and for a protective order); *Rardon v. Falcon Safety Prods., Inc.*, No. 23-1594, 2023 WL 5347298, at *2 (3d Cir. Aug. 21, 2023); *Cruz*, 2026 WL 1022414, at *3. The subpoenaing seeking third party discovery must make "a stronger showing of relevance than for party discovery." *Drywall Antitrust*, 300 F.R.D. at 240. Conversely, the movant more easily obtains a protective order than it does an order to quash. *Id*. at 239.

measured by (1) the extent to which the proposed deposition promises to focus on central factual issues, rather than peripheral concerns; (2) the availability of the information from other sources, viewed with an eye toward avoiding cumulative or duplicative discovery; and (3) the harm to the party's representational rights resulting from the attorney's deposition." *Frazier v. Se. Pennsylvania Transp. Auth.*, 161 F.R.D. 309, 313 (E.D. Pa. 1995); *see also*; *Aamco Transmissions, Inc. v. Baker*, No. CIV.A. 06-5252, 2008 WL 509220, at *3 (E.D. Pa. Feb. 25, 2008) (applying *Frazier* factors); *Premium Payment Plan v. Shannon Cab Co.*, 268 F.R.D. 203, 205 (E.D. Pa. 2010) (same, citing *Frazier*); *Adeniyi-Jones v. State Farm Mut. Auto. Co.*, No. CV 14-7101, 2015 WL 6180965, at *1 (E.D. Pa. Oct. 21, 2015) (same, citing *Frazier*).

Other courts in this District have held that "the deposition of counsel to an adversary is disfavored" (*In re Plastics Additives Antitrust Litig.*, No. CV 03-2038, 2005 WL 8149514, at *3 (E.D. Pa. Aug. 9, 2005) and, thus, "the deposing party must show that: 1) no other means exists to obtain the information sought; 2) the information sought is nonprivileged; and 3) the information is crucial to the preparation of the case," applying the framework set forth in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). *See Cambs v. Am. Express Co., Inc.*, No. CV 15-428, 2016 WL 4735022, at *2 (E.D. Pa. Sept. 12, 2016); *State Farm Mut. Auto. Ins. Co. v. Stavropolskiy*, No. 15-CV-5929, 2017 WL 3116284, at *2 (E.D. Pa. July 21, 2017) (acknowledging *Frazier*, but concluding that "the *Shelton* rule provides the appropriate framework for analysis in these cases"); *United States v. Kindred Healthcare, Inc.*, No. CV 16-00683-KSM, 2024 WL 5410444, at *6 (E.D. Pa. Nov. 13, 2024) ("[C]ourts in the Third Circuit Court of Appeals have applied the test set forth in *Shelton* . . ." (collecting cases)). The *Frazier* line of cases places the burden of proof on the party seeking to quash, while the *Shelton* line places the burden on the subpoenaing party. *Compare Frazier*, 161 F.R.D. 313 (the party opposing the deposition must "establish[] undue burden or

oppression"); *with Cambs*, 2016 WL 4735022, at *2 ("Under the *Shelton* rule, the deposing party must show …"). Under either set of precedent, the subpoena should be quashed.

## IV. ARGUMENT

Transfer, or, alternatively, an order quashing the Subpoena, is appropriate. The Motion is properly before this Court because it concerns a Subpoena that requires compliance in this District. Further, VWR has standing to move (with Mr. Miller) to transfer or quash the Subpoena because Mr. Miller, VWR's former General Counsel, possesses information protected by VWR's company privilege.

Transfer to the Southern District of New York under Fed. R. Civ. P. 45(f) is appropriate because Mr. Miller consents to transfer and, even if he did not, there are exceptional circumstances. In the alternative, if the Court decides to adjudicate this dispute, the Court should quash the Subpoena or enter a protective order (eliminating the deposition requirement) because the Subpoena blatantly seeks privileged information. At minimum, the Court should appropriately limit Sussman's inquiry to information that does not implicate the attorney-client privilege and work product doctrine.

### A. The Motion Is Properly Before the Court

The present Motion is properly before the Court because the Court has subject matter jurisdiction, venue is proper here, and the motion is timely. First, this Court has subject matter jurisdiction because the court in the Underlying Action does, pursuant to 28 U.S.C. § 1332(a)(1). *See U.S. Cath. Conf.*, 487 U.S. at 76; *McCook*, 249 F.3d at 333-34. The operative Complaint alleges that jurisdiction is proper based on diversity of citizenship (VWR is a citizen of Pennsylvania and Delaware, and Sussman is a citizen of New York) and demands over ten million dollars in damages (Underlying Action, Dkt. 68, ¶¶ 19, 167). The court in the Underlying Action acknowledged that the operative complaint establishes diversity. *Id*. Dkt. 92 at 4.

Further, VWR has standing to contest the Subpoena because the Subpoena seeks testimony from Mr. Miller, VWR's former lawyer, and demands documents that would have been obtained within the scope of his employment, namely, "[a]ll documents that refer to any bidding by VWR on contracts with the New York Department of Education or New York city (sic) schools, and any communications with [VWR employees.]" Ex. A at Ex. 2. As stated more fully below, VWR seeks relief "based on claims of privilege" and because it has a personal "interest" in the information that Sussman seeks. *Thomas*, 202 F.R.D. at 434; *see also Meyer*, 2019 WL 2903666, at *1, n.1; *White*, 2024 WL 5668920, at *2, n. 1.

Second, venue is proper in this Court. The appropriate venue for motions to quash or for a protective order concerning a third-party subpoena lies in the place of compliance. *See* Fed. R. Civ. P. 26(c)(1) (parties may move for a protective order "in the court for the district where the deposition will be taken"); *Id*. R. 45(d)(3) (quash motions proper in "the court for the district where compliance is required"); *Id*. R. 45(f) ("the court where compliance is required … may transfer"). The place of compliance is the place named in the subpoena (*Takeda*, WL 6201363, at *2) and here, that place is Mr. Miller's "home," which is in the Eastern District of Pennsylvania (Ex. A).

Finally, the present motion is timely because it was filed before the date of compliance. *See Keebaugh*, 2019 WL 5802703, at *2. The subpoena commands Mr. Miller to appear on September 11 at 9:30 am, and that date has not yet arrived as of this filing.

### B. The Court Should Transfer the Dispute

Movants respectfully request that the Court, in its discretion, transfer this dispute to the Southern District of New York for adjudication by Judge Moses in the Underlying Action. Transfer is warranted because Mr. Miller consents to it and Judge Moses already ruled on issues affecting the outcome of the present motion, creating "exceptional circumstances." Fed. R. Civ. P. 45(f).

Mr. Miller's consent alone justifies the transfer to Judge Moses. *PharmaCare*, 2024 WL 2301407, at *2. Even if Mr. Miller did not consent, the "exceptional circumstances" present in this case are likewise sufficient to justify a transfer. *See Green*, 216 F. Supp. 3d at 565. Although the authority in this District is split on the specific standard that should be applied to a motion to quash a subpoena for a party's lawyer's deposition, either standard considers the need to depose the lawyer and its effect on the opposing party's representational interests. *See supra*, Part III.B. Judge Moses has already addressed similar issues on numerous occasions, including, for example, Sussman's demand for documents exchanged between VWR and law enforcement concerning Mr. Johnson's conduct or documents provided to VWR's board of directors. Underlying Action, Dkts. 141 ¶ 1.a (ordering VWR to produce documents VWR gave to law enforcement), 178 (denying Sussman motion to compel production from VWR's board of directors).

As particularly relevant here, Judge Moses has also addressed (and denied) Sussman's motion to compel depositions of other VWR executives and in-house counsel. Sussman requested the deposition of former in-house counsel Stacy Broad, whose role was limited to providing legal advice as in-house counsel. Underlying Action, Dkts. 132, 134 at 7-8. At a February 25, 2026 conference, Judge Moses rejected Sussman's request, finding it premature and inappropriate on privilege grounds. *Id*. Dkt. 141 ¶ 2.e (rejecting Ms. Broad's deposition as, "among other things," premature); Ex. F 175:21-176:7 (rejecting deposition of former CEO Michael Stubblefield as "premature"; finding further that "[u]nless I change my mind dramatically on privilege, you're not getting Ms. Broad['s]" deposition). Those rulings "have significant implications for the resolution" of VWR's present motion because they bear on the propriety and proportionality of Sussman's present request. "Exceptional circumstances" are therefore present, and transfer is warranted. *See Green*, 216 F. Supp. 3d at 565.

**C. Alternatively, the Court Should Issue a Protective Order or Quash the Subpoena**

Should the Court decide that transfer is not warranted, VWR requests that the Court quash the Subpoena or enter a protective order eliminating the deposition requirement.

*i.* *<u>The Subpoena Should be Quashed Because it Seeks Privileged Information</u>*

The Subpoena should be quashed because it seeks privileged information. Fed. R. Civ. P. 26 (c)(1) (the court may forbid inquiry, prescribe alternative methods); *Id*. R. 45(d)(3)(A)(iii) (the court "must" quash a subpoena seeking "privileged or other protected matter"). Where a party establishes that information sought is subject to protection, that fact alone justifies a quash order. *See Savant*, 2012 WL 987404, at *4; *Keebaugh*, 2019 WL 5802703, at *4.

Here, the Subpoena seeks work product and attorney-client privileged information because it demands the deposition of VWR's former General Counsel, who declares that all the information he could provide would be protected under the attorney client privilege and work product doctrine. Ex. A ¶ 14. Sussman's request to depose Mr. Miller not only poses a substantial risk to VWR's privileges (*see Cambs*, 2016 WL 4735022, at *3), it will certainly violate them. Accordingly, the Court "must" quash the subpoena because it seeks "privileged or other protected matter[.]" Fed. R. Civ. P. 45(d)(3)(A)(iii).

*ii.* *<u>The Court Should Quash the Subpoena Because It Imposes an Undue Burden</u>*

Even if it did not seek information that was privileged in its entirety, the Subpoena should also be quashed or limited under either the *Shelton* or *Frazier* standard because it imposes an undue burden. The burden the subpoena imposes is independently sufficient to warrant a quash order. *See Frank*, 2015 WL 4770965 at *5.

**a. The Court Should Apply *Shelton***

As noted above, the authority in this District is split on the standard that applies to a motion to quash or for a protective order to prevent the deposition of a party's lawyer. *Compare Frazier*, 161 F.R.D. at 313 *with State Farm*, 2017 WL 3116284, at *2. The Court should apply *Shelton* in lieu of *Frazier* here for several reasons. First, the *Shelton* framework comes from a court of appeals. *See Shelton*, 805 F.2d 1323. Second, *Shelton* is in harmony with the decisions of other circuits insofar as those decisions counsel in favor of stricter protection against depositions of party lawyers.[2] Third, more recent decisions from this District apply *Shelton*, *see Cambs*, 2016 WL 4735022, at *2; *Kindred*, 2024 WL 5410444, at *6, even where they acknowledge the split in authority, *see State Farm,* 2017 WL 3116284, at *2. Fourth, *Frazier* relied on outdated caselaw from the District of New Jersey, in placing the burden on the party resisting counsel's deposition. *See Frazier*, 161 F.R.D. at 313 (citing *Johnston Development Group, Inc. v. Carpenters Local Union No. 1578,* 130 F.R.D. 348, 352–53 (D.N.J. 1990)). More recent District of New Jersey cases, however, apply *Shelton*. *See Patrick v. Equifax Info. Servs., LLC*, No. 23-4092, 2024 WL 4404187, at *4 & n.4 (D.N.J. Oct. 3, 2024) (acknowledging *Johnston* but applying *Shelton* based on its "more widespread adoption").

The Court need not necessarily resolve the split in authority here, however, because under either framework, VWR is entitled to a protective order and/or an order quashing the Subpoena.

**b. The Subpoena Should be Quashed Under *Shelton***

The Subpoena should be quashed or limited under the *Shelton* framework because Sussman cannot show that "(1) no other means exist to obtain the information than to depose opposing counsel

---

[2] *See Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003) (acknowledging that deposing a party's lawyer is "disfavored" and setting forth special factors); *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71-72 (2d Cir. 2003) (Sotomayor, J) (acknowledging that deposing a party's lawyer is "disfavored," albiet declining to apply *Shelton* in favor of a more flexible approach); *Nguyen v. Excel Corp.*, 197 F.3d 200, 208-09 (5th Cir. 1999) (acknowledging that deposing a party's lawyer is "disfavored" and analyzing *Shelton* factors); *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628-29 (6th Cir. 2002) (adopting *Shelton*); *Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir. 1995) ("we approve of the criteria set forth in *Shelton*").

…; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327; *see also State Farm*, 2017 WL 3116284, at *2.

*First*, Sussman cannot show that Mr. Miller is the only source of the information they seek. In fact, Mr. Miller's lack of personal knowledge (*see* Ex. A ¶¶ 12) demonstrates why he is not a necessary source of factual discovery. Sussman has claimed in communications with VWR that it is necessary to depose Mr. Miller to understand what he reported to VWR's or Avantor's boards of directors concerning Mr. Johnson's conduct in his capacity as Corporate Secretary. But Mr. Miller never made any such report. His only involvement with respect to Sussman's allegations was in his capacity as General Counsel, not Corporate Secretary. *Id*. ¶¶ 9-10.

If Sussman seeks evidence from Mr. Miller concerning sales, bidding, pricing, the Triumph Board business, or the performance of the Agreement (the subjects identified in the Subpoena's document requests) the sources of that evidence are the individuals who participated in those activities and the contemporaneous, non-privileged, business records, not Mr. Miller. Sussman can seek, and has sought, such testimony and documents in the Underlying Action, including by deposing former employee Ahmed Mustafa and demanding documents concerning Mr. Johnson's conduct and VWR's disclosure of his conduct to law enforcement (and VWR has produced such documents). *See* Ex. E.

And finally, to the extent Sussman seeks testimony about VWR's reaction to Sussman's February 2019 letter to Mr. Miller, or what VWR knew about Sussman's allegations in that letter beforehand, that argument fails under *State Farm*, 2017 WL 3116284, at *3. In that case, the defendant sought information about investigations State Farm conducted before the lawsuit to determine whether the applicable statute of limitations barred fraud claims. *Id*. at *1. The Court rejected the proposed attorney depositions based on the first *Shelton* prong alone because "there is

no reason State Farm's counsel of record would be uniquely qualified to testify as to what *their clients* knew and did" and there was no indication that State Farm's corporate witness could not provide the relevant information. *Id*. at *3-4 (emphasis in original). The same reasoning applies here. Mr. Miller does not merely lack unique knowledge of what VWR knew and did; he affirmatively attests that he was not involved in the underlying business activities and has no personal knowledge of the events giving rise to Sussman's claims.

*Second*, Sussman cannot show that it seeks exclusively non-privileged information. By demanding Mr. Miller's deposition and any documents he exchanged with VWR employees or board members about VWR's bidding practices, the Subpoena blatantly demands privileged information. Although the exact questions Sussman intends to pose to Mr. Miller are not yet known, the Court can assess the clear risk a deposition would pose under these circumstances given Mr. Miller's role as General Counsel and the fact that his only involvement was to obtain or provide legal advice for VWR in connection with that role. *See* Ex. A ¶ 12; *see also Cambs*, 2016 WL 4735022, at *3 (rejecting proposed deposition of paralegal to party's in-house counsel that "creates some risk of harm to defendant's representational rights . . . some of the information plaintiff seeks could elicit privileged communications"); *c.f. Aamco*, 2008 WL 509220, at *3 (deposition of a party's lawyer justified where they played a "role in the termination decision" – the central issue in that case).

*Third*, Sussman cannot show that Mr. Miller's testimony is crucial to the case. Mr. Miller did not negotiate or perform the Agreement (Ex. A ¶ 6), his position had nothing to do with sales (*id*.), he has no personal knowledge of the underlying events (*id*. ¶ 7), and any relevant information he possesses was gained after the fact in his capacity as counsel for VWR (*id*. ¶¶ 12, 14). Courts in this District typically order depositions of counsel only if they are percipient witnesses to crucial issues in the litigation. *See Aamco*, 2008 WL 509220, at *3 (lawyer participated in the contract

termination giving rise to the suit); *Shannon Cab*, 268 F.R.D. at 205 (lawyer's deposition warranted where he helped on "day-to-day business transactions" and his testimony was potentially "critical" to determining issues of agent authority). That is not the case here.

For these reasons, the Court should quash the Subpoena because Sussman cannot and has not met its burden under *Shelton*.

**c. The Subpoena Should be Quashed Under *Frazier***

Even if the Court applies *Frazier* in lieu of *Shelton*, placing the burden on VWR, the Subpoena should be quashed. *See Frazier*, 161 F.R.D. at 313. All the *Frazier* factors weigh in VWR's favor, justifying a finding of undue burden.

*First*, the proposed deposition does not and cannot "promise[] to focus on central factual issues, rather than peripheral concerns[.]" *Id*. As discussed above, Mr. Miller's involvement with respect to the allegations in the Underlying Action was in his capacity as General Counsel only—*e.g.*, to oversee VWR's legal response, supervise in-house and outside counsel, and address legal issues arising from Sussman's allegations. *See* Ex. A ¶ 9; *c.f. Adeniyi-Jones*, 2015 WL 6180965 (deposition of party lawyer warranted to discover information about counsel's conversations with insurance claim adjuster to defeat claim of bad faith); *Shannon Cab*, 268 F.R.D. at 205 (lawyer deposition warranted where his testimony was potentially "critical" to determining issues of agent authority). Any deposition poses a substantial risk that privileged matters would be revealed and there is no reason to believe that proper inquiry will occur. *See Cambs*, 2016 WL 4735022, at *3.

*Second*, Sussman can obtain any of the information it seeks from Mr. Miller (facts concerning Mr. Johnson's conduct, how VWR reacted to Sussman's February 2019 allegations, to the extent that information is not privileged) from other sources. *See Frazier*, 161 F.R.D. at 313. Sussman has already deposed Ahmed Mustafa who, unlike Mr. Miller, worked in sales at VWR. Ahmed Mustafa

also communicated with and supervised Dwayne Johnson, the former VWR employee who engaged in the bid-rigging conduct that gave rise to the Underlying Action. Sussman has also subpoenaed Steve Goodman, who was Mustafa's direct supervisor, and requested the deposition of Tricia Sheen, who worked in the relevant sales group. These are the witnesses who would have direct and personal knowledge related to Sussman's allegations—not in-house counsel, such as Mr. Miller.

Moreover, Judge Moses already ordered VWR to produce all communications and documents exchanged with the Department of Justice in connection with its voluntary self-disclosure of Mr. Johnson's bid-rigging conduct and related conditional leniency proceedings (*see* Underlying Action, Dkt. 141 ¶ 2.a) in addition to the voluminous discovery already conducted on the parties' communications and business practices. *See* Ex. E. Considering these facts, and the fact that Mr. Miller cannot provide any information that he uniquely, personally and directly has, any deposition would be cumulative. The sources of information already available to Sussman more than "approximate" whatever non-privileged information Mr. Miller could provide. *C.f. Shannon Cab*, 268 F.R.D. at 206.

*Third*, deposing Mr. Miller would impose tremendous harm on VWR's representational rights. *See Frazier*, 161 F.R.D. at 313. Mr. Miller simply provided legal advice to VWR concerning Sussman's allegations in his capacity as General Counsel. Ex. A ¶¶ 9, 14. The *Cambs* court found "some risk of harm to defendant's representational rights" from deposing a paralegal who had engaged in privileged communications concerning the matters in litigation, even though that individual was not trial counsel. 2016 WL 4735022, at *3. Here, because Mr. Miller's relevant involvement was exclusively in his capacity as General Counsel, attempting to extract his derivative knowledge would force VWR to police the boundary between discoverable historical fact and

protected communications, investigations, mental impressions, and legal advice throughout the examination. Any deposition of Mr. Miller would make a mockery of VWR's representational rights.

**d. The Court Should Enter a Protective Order Precluding Mr. Miller's Deposition**

Precedent is clear that the burden to obtain a protective order is lower (*See Drywall Antitrust*, 300 F.R.D. at 239), and that Courts apply similar undue burden analyses to motions for a protective order and to quash (*see Cambs*, 2016 WL 4735022, at *2; *In re Mushroom*, 2012 WL 298480, at *3; *Frank Brunckhorst*, 2012 WL 5250399, at *5). In addition, Fed. R. Civ. P. 26(c)(1)(A) authorizes the Court to "forbid[]" unwarranted discovery. Accordingly, even if the Court concludes that VWR has not met the "heav[ier]" burden required on a motion to quash, it should at minimum enter a protective order eliminating Mr. Miller's deposition under the same *Shelton* factors. *See Drywall Antitrust*, 300 F.R.D. at 239.

For the reasons already discussed, a protective order is appropriate to prevent the undue burden of requiring VWR's former General Counsel to appear for deposition. Even if Sussman identifies some narrow, nonprivileged information that it genuinely needs from Mr. Miller, the Court can require Sussman to obtain it without subjecting Mr. Miller to a deposition, which would, for the reasons already discussed, be extremely burdensome.

**e. The Subpoena's Document Requests are Improper**

The Subpoena also commands Mr. Miller to produce "[a]ll documents that refer to any bidding by VWR on contracts with the New York Department of Education or New York city schools, and any communications with Dwayne Johnson, Ahmed Mustafa, Corey Walker, Michael Stubblefield or any member of the VWR or Avantor Board concerning such bidding." Ex. A at Ex. 2. Mr. Miller does not have such documents in his possession, custody, or control because he is no longer a VWR employee (and has not been for over three years). Ex. A ¶¶ 1, 13. Even if Mr. Miller

did possess such documents, however, the Subpoena should be quashed on privilege and undue burden grounds. First, the request for "all documents that refer to any bidding" and "any communications" with co-workers is extremely burdensome and overbroad in light of the discovery already conducted, and all documents referring to "any" bidding by VWR on contracts with the NYC DOE or public schools would encompass documents not relevant to the Underlying Action at all. *See* Ex. E. And second, even if Mr. Miller had the documentation and could provide it at a reasonable expense, it would consist almost entirely of privileged information due to Mr. Miller's role, which was to provide legal advice to VWR following receipt of Sussman's allegations. Ex. A ¶ 9. Therefore, the Subpoena is improper in its entirety, and Movants request that the Court quash it or enter a protective order eliminating the requirement to produce documents as well.

## V. CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court transfer the dispute regarding the Subpoena to the Southern District of New York. Alternatively, Movants respectfully request that the Court issue an Order quashing the Subpoena or enter a protective order eliminating the deposition requirement and/or appropriately tailoring Sussman's areas of inquiry.

Dated: September 10, 2026

Respectfully submitted,

By: *__/s/ Beth Moskow-Schnoll__*

Beth Moskow-Schnoll
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 861-7360

Kan M. Nawaday
Emily Seiderman West
VENABLE LLP
151 West 42nd Street, 49th Floor
New York, NY 10036
Tel: (212) 370-6240 / (212) 503-9816
*(pro hac vice motions forthcoming)*

*Attorneys for Defendant VWR International, LLC and Justin M. Miller*